**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CLARENCE DACE,** ) | |
| **N22471,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 26-cv-764-DWD** |
| **vs.** ) | |
| ) | |
| **ASST. WARDEN HVARRE,** ) | |
| **DR. LARSON,** ) | |
| **TATE,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM & ORDER</u>

**DUGAN, District Judge:**

Plaintiff Clarence Dace, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Big Muddy River Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1).  On June 9, 2026, the Court designated two claims to proceed in this case concerning Plaintiff's alleged need for prostate cancer treatment, and treatment for a lump in his side, and chronic right knee pain.  (Doc. 7).  With the Complaint, Plaintiff also filed a Motion for a Preliminary Injunction (Doc. 2), and the Court directed a response. With an extension, Defendants have now responded.  (Doc. 24).  Plaintiff has also filed an interim Motion for Prospective Relief.  (Doc. 9).  For reasons explained in this Order, a ruling on the Preliminary Injunction is deferred, and the Motion for Prospective relief is denied as unrelated to the operative claims.

In the complaint, Plaintiff alleged that at prior prisons he was being treated for prostate cancer, chronic knee issues requiring a knee replacement, and a lump on his side. He claimed that upon arrival at Big Muddy in April of 2025, he continued to seek follow-up care for all three conditions from Dr. Larson. He alleged Dr. Larson stated that care would be forthcoming, but even after follow-up visits, nothing was done. Plaintiff further alleged that he spoke to Defendant Hvarre about his need for care in September of 2025 and March of 2026, at which times she promised she would contact medical staff on his behalf, but nothing was done. Finally, he alleges he spoke to Defendant Tate on numerous occasions about his need for care and Tate told him to be patient, but he never received care. In the Motion for a Preliminary Injunction, Plaintiff sought medical care for his three conditions, a prison transfer, and a protective order concerning recent prison discipline. In the merit review order, the Court narrowed the scope of preliminary injunctive relief solely to the issue of treatment for Plaintiff's three conditions at Big Muddy. (Doc. 7 at 6-7).

In the Motion for Prospective Relief (Doc. 9), Plaintiff alleges that Dr. Larson has now retaliated against him by discontinuing his pain medication and a skin cream, and by failing to treat several other conditions. He also alleges he was forced to take medications via a crush-and-float method, but he contends he could not do this because of a sore in his mouth. Plaintiff seeks relief from Dr. Larson's alleged retaliation, though he does not demand a specific course of action. (*Id.*).

In response to Plaintiff's initial Motion for a Preliminary Injunction, Defendant Hvarre contends that no relief is warranted because Plaintiff is receiving ongoing care,

he cannot establish a likelihood of harm absent immediate relief, and the relief he seeks would impose a significant burden on defendants and weigh against the public interest. Specifically, as to the lump, Defendant contends that Plaintiff was seen by a nurse and referred to a doctor, and that a doctor's visit recently occurred on May 8, 2026. The records tendered do not completely support this chronology and seem to overlook the overall scope of the issue. The records tendered show that on April 10, 2025, a doctor at Dixon correctional center wrote, "please set this pt up to see me next week so I can excise the lump under his R breast." (Doc. 24-1 at 7). Plaintiff was then transferred to Big Muddy before the excision took place, and an April 15, 2026, nurse sick call note indicates that Plaintiff would be referred to the doctor for persistent acute discomfort associated with the lump. (*Id.* at 31). There is not a subsequent note from May 8, 2026, reflecting that Plaintiff actually saw a doctor, nor is there any indication if a course of treatment was selected.

Next, as to the right knee pain, Defendant indicates that on August 28, 2025, Plaintiff had a knee x-ray which noted mild osteoarthritis. (Doc. 24-1 at 44). Defendant argues that since this time at subsequent doctors' visits and via sick call, Plaintiff has not sought care for his knee. There is no indication in the records that Plaintiff was actually seen to review results or follow-up on his knee issues after the August 2025 x-ray. Prior notes from March of 2024 indicate that Plaintiff received injections for his right knee in an effort to improve pain, instability, and inability to bear weight on his right knee. (Doc. 24-1 at 49).

Third, as to the prostate cancer, Defendant indicates that on December 11, 2024, Plaintiff had his prostate removed due to cancer. Defendant cites to pages 26-29 of the medical records for the proposition that Plaintiff had his prostate removed on December 11, 2024, but the records cited do not support this assertion. Instead, the records indicate merely that Plaintiff had an investigative procedure performed on June 12, 2024, and that the plan was to perform routine PSA checks with another prostate MRI to occur in three months. (Doc. 24-1 at 28). Subsequent medical records from Dixon indicate that in January of 2025 and March of 2025 Plaintiff was still seeking prostate care. Defendant indicates that upon request, Plaintiff was seen twice at Big Muddy in May of 2025 to address cancer concerns, and he was screened for colorectal cancer. Defendant contends that because Plaintiff has not sought subsequent cancer care since May of 2025, there is nothing further to be offered. Again, the records seemingly contradict Defendant's assertions. Though Hvarre contends that Plaintiff's prostate was removed in December of 2024 without any evidentiary support, the evidence submitted suggests otherwise.

Specifically, notes from Dixon indicate that on January 15, 2025, Plaintiff inquired at nurse sick call about prostate issues, (Doc. 24-1 at 16), and in March of 2025 a nurse practitioner noted that an MRI on Plaintiff's prostate was due in June of 2025 with no appointment yet made, and that a urology appointment was also to be scheduled. (Doc. 24-1 at 5).

Defendant Hvarre also argues in response to Plaintiff's Motion that the prison transfer he seeks is not directly connected to the merits of his underlying claim and it would be an overreach into daily prison operations and security. This line of

argumentation is misplaced because the Court clearly stated in the merit review order that it was not going to further consider Plaintiff's request for a transfer, and that Defendant need only respond concerning the status of medical treatment.

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and, irreparable harm without the injunctive relief.  *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).  As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).  The Court must also decide whether an adequate remedy at law exists and whether the plaintiff will suffer irreparable harm without injunctive relief.  Irreparable harm is harm which cannot be repaired.  *Graham v. Med. Mut. Of Ohio*, 130 F.3d 293, 296 (7th Cir. 1998) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for.  The injury must be of a particular nature, so that compensation in money cannot atone for it.").  The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.; Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013).  "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665.

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818.  If injunctive relief is warranted, the Prison Litigation Reform Act provides that the

injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).  Injunctive relief must be related to issues in the underlying lawsuit.  *See e.g., Tatum v. Hunter,* Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, including a request for a transfer, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.,* Case No. 19-cv-394 (S.D. Ill. 2019).

Here, Defendant's response is woefully inadequate because the records tendered do not support a finding that Plaintiff has received appropriate treatment for his prostate, knee, or the lump in his chest.  Though Defendant contends that Plaintiff was seen about the lump in May of 2026, this is not supported by the documents, and it is not clear if care is on the appropriate course.  It is important to note that on April 10, 2025, a doctor wanted to remove the lump within a week at Dixon, but Plaintiff was transferred before that happened and follow-up care has been slow.  Additionally, Defendant contends Plaintiff's prostate was removed in December of 2024, but the records cited do not support this and additional records suggest this may not have occurred.  Finally, on the issue of knee pain, there is no indication that Plaintiff was seen by a provider to review the results of the August 2025 x-ray or to establish a plan of care.  Given all of these issues that are still unresolved on the documents tendered, the Court cannot yet rule on Plaintiff's Motion.  Thus, a ruling on the preliminary injunction is deferred.

By contrast, Plaintiff's Motion for Prospective Relief (Doc. 9) is **DENIED** because it presents an entirely new legal theory of retaliation, and a host of new medical issues. The Court will not grant injunctive relief broader than the claims and parties proceeding in a case, so the motion is denied.

**Defendant Hvarre shall have seven days to file a supplemental response on Plaintiff's Motion for a Preliminary Injunction (Doc. 2).** The Court finds it worth mention that, as highlighted in the Order above, several of the factual representations in the response brief (Doc. 24) were not properly supported by the substance of the attached medical records (Doc. 24-1). Counsel is reminded that per Federal Rule of Civil Procedure 11(b)(3), an attorney filing a pleading certifies that the factual contentions have evidentiary support. A failure to follow Rule 11(b) in subsequent pleadings will result in sanctions.

> **IT IS SO ORDERED.**

> Dated: August 4, 2026

DAVID W. DUGAN
United States District Judge