**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CLARENCE DACE,** | ) | |
| **N22471,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 26-cv-764-DWD** |
| **vs.** | ) | |
| | ) | |
| **ASST. WARDEN HVARRE,** | ) | |
| **DR. LARSON,** | ) | |
| **TATE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Clarence Dace, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Big Muddy River Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). On June 9, 2026, the Court designated a claim to proceed in this case concerning Plaintiff's alleged need for prostate cancer treatment, and treatment for a lump in his side, and chronic right knee pain. (Doc. 7). With the Complaint, Plaintiff also filed a Motion for a Preliminary Injunction (Doc. 2), and the Court directed a response. Unsatisfied with the Defendant's initial response (Doc. 24), the Court directed a more detailed response (Doc. 25), and a second response was filed on August 25, 2026 (Doc. 35). After the first response and the Court's Order for more detail, but before the second response, Plaintiff filed a reply. (Doc. 36). Based on the evidence now before the Court,

Plaintiff's Motion for a Preliminary Injunction will be denied for reasons explained herein.

In the complaint, Plaintiff alleged that at prior prisons he was being treated for prostate cancer, chronic knee issues requiring a knee replacement, and a lump on his side. He claimed that upon arrival at Big Muddy in April of 2025, he continued to seek follow-up care for all three conditions from Dr. Larson. He alleged Dr. Larson stated that care would be forthcoming, but even after follow-up visits, nothing was done. Plaintiff further alleged that he spoke to Defendant Hvarre about his need for care in September of 2025 and March of 2026, at which times she promised she would contact medical staff on his behalf, but nothing was done. Finally, he alleges he spoke to Defendant Tate on numerous occasions about his need for care and Tate told him to be patient, but he never received care. Plaintiff was allowed to proceed on a single Eighth Amendment claim against Defendants Dr. Larson, Hvarre, and Tate for their alleged roles in denying or delaying care for Plaintiff's prostate cancer, his chronic right knee pain, and the lump on his abdomen. (Doc. 7 at 3). In the Motion for a Preliminary Injunction, Plaintiff sought medical care for his three conditions, a prison transfer, and a protective order concerning recent prison discipline. In the merit review order, the Court narrowed the scope of preliminary injunctive relief solely to the issue of treatment for Plaintiff's three conditions at Big Muddy. (Doc. 7 at 6-7).

In response to Plaintiff's initial Motion for a Preliminary Injunction, Defendant Hvarre contends that no relief is warranted because Plaintiff is receiving ongoing care, he cannot establish a likelihood of harm absent immediate relief, and the relief he seeks

would impose a significant burden on defendants and weigh against the public interest. Specifically, as to the lump, Defendant contends that Plaintiff was seen by a nurse and referred to a doctor, and that a doctor's visit recently occurred on May 8, 2026. Though the initial medical records submitted did not make it clear that Plaintiff had received adequate treatment for the lump, the records submitted with the latest response indicate that Plaintiff was seen for the lump multiple times in recent months, and that he and a physician agreed on August 12, 2026, that the lump had gone away. (Doc. 35-2 at 14). If the lump is no longer present, as the evidence demonstrates, then there is no preliminary injunctive relief to be afforded for this condition.

Next, as to the right knee pain, Defendant indicated in the initial response that on August 28, 2025, Plaintiff had a knee x-ray which noted mild osteoarthritis. (Doc. 24-1 at 44). The Court took issue with the apparent lack of follow-up care demonstrated by Defendant's initial response, but Defendant now attests that Plaintiff saw the physician and discussed this issue on August 12, 2026. The consultation resulted in a referral for an orthopedic appointment, which counsel attests has not yet been scheduled, but which should be forthcoming. (Doc. 35 at 2; Doc. 35-2 at 9-10).

Third, as to the prostate cancer, Defendant's initial response erroneously indicated that Plaintiff's prostate had been removed, despite several medical records with the response contradicting this assertion. Counsel apologized for this error and clarified that Plaintiff continues to be seen for his prostate issues. (Doc. 35 at 3). Specifically, counsel now explains that Plaintiff received a referral for a urology follow-up on July 7, 2026, with the follow up to occur in late August. (Doc. 35 at 3). Counsel also indicates Plaintiff was

scheduled to go out for a prostate MRI on August 4, 2026, but that Plaintiff missed the appointment because he refused to be transported with certain restraints. The appointment was rescheduled. (Doc. 35-1 at 1; Doc. 35-3 at 1). Counsel adds that Plaintiff discussed the prostate issue with the physician on August 12, 2026. (Doc. 35-2 at 11). The supporting medical records confirm these representations. (Docs. 35-1, 35-2, 35-3).

In reply to Defendant's initial preliminary injunction response, Plaintiff states that after he went on a medical writ on July 7, 2026, and was dissatisfied with the transportation and use of black box restraints, he decided that he will no longer go on medical writs with Big Muddy prison staff. (Doc. 36 at 7). Plaintiff further alleges he discussed the restraints with the physician on August 12, 2026, but the physician indicated he had nothing to do with the sort of restraints used and did not offer assistance. (*Id.* at 8). Despite his insistence that he would not leave the facility for a writ again, Plaintiff indicated in his reply that on August 25, 2026, he attended an outside urology visit. (Doc. 36 at 10). Plaintiff again complains the van he used could not properly accommodate his wheelchair and the black box restraints were used. (*Id.*).

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and, irreparable harm without the injunctive relief. *See* *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). The Court must also decide whether an adequate remedy at law exists and whether the plaintiff will suffer

irreparable harm without injunctive relief. Irreparable harm is harm which cannot be repaired. *Graham v. Med. Mut. Of Ohio*, 130 F.3d 293, 296 (7th Cir. 1998) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it."). The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665.

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Injunctive relief must be related to issues in the underlying lawsuit. *See e.g., Tatum v. Hunter,* Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, including a request for a transfer, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.*, Case No. 19-cv-394 (S.D. Ill. 2019).

The Defendant's second response (Doc. 35) and the supporting exhibits (Docs. 35-1, 35-2, 35-3) demonstrate significant progress on Plaintiff's three medical conditions. The

lump in Plaintiff's chest has apparently self-resolved, he has been scheduled for an orthopedic consultation, and multiple steps have been taken regarding his prostate cancer, including a visit to the urologist last week. Against this backdrop, the Court simply cannot conclude that Plaintiff would suffer irreparable harm without immediate Court intervention. Additionally, with comprehensive care being directed as recently as August 12, 2026, the Court is in no position to alter or override orders from the physician that appear sound to address Plaintiff's medical needs. As for Plaintiff's dissatisfaction with the form of prison transportation or restraints, these issues are not aligned with the operative claims in this case, so injunctive relief on this basis is not appropriate. Though the Court certainly understands Plaintiff's frustration that his care had essentially stalled out until he filed this lawsuit, care has now resumed, and preliminary injunctive relief would not provide any assistance beyond what has already transpired. Accordingly, Plaintiff's Motion for a Preliminary Injunction (Doc. 2) is now **DENIED**.

**IT IS SO ORDERED.**

Dated: September 1, 2026

DAVID W. DUGAN
United States District Judge